UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Ajay Sports, Inc., et al.,[1]   Case No. 06-59289
                                Chapter 11
            Debtor.             Hon. Phillip J. Shefferly
_____/

**OPINION DENYING AMENDED APPLICATIONS FOR
EMPLOYMENT OF SCHAFER & WEINER, PLLC AS
COUNSEL FOR DEBTORS**

1. Introduction

There are four debtors in these jointly administered cases. They are all related. Each of them has filed an application to employ Schafer & Weiner, PLLC as its counsel. A creditor objected to the applications under § 327(a) and (c) of the Bankruptcy Code because there are various inter-company claims and debts among these Debtors, including an alleged fraudulent conveyance action, and because the law firm failed to adequately disclose all of the facts necessary to support its applications. According to the objecting creditor, these facts preclude the Court from authorizing each of the Debtors to employ Schafer & Weiner, PLLC. The Court has previously authorized the employment of Schafer & Weiner, PLLC in one of the four cases, Pro Golf of America, Inc. This opinion addresses the creditor's objections to the applications filed by the Debtors in the other three jointly administered cases. For the reasons that follow, the Court denies those three applications.

2. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core

---

[1]Jointly administered with ProGolf.com, Inc., Case No. 06-59292, Pro Golf International, Inc., Case No. 06-59290 and Pro Golf of America, Inc., Case No. 06-59291.

proceeding under 28 U.S.C. § 157(b)(2)(A).

3. <u>Facts</u>

On December 27, 2006, four Debtors each filed a Chapter 11 petition. Those four Debtors are Ajay Sports, Inc. ("Ajay"), Pro Golf International, Inc. ("PGI"), Pro Golf of America, Inc. ("PGA"), and ProGolf.com, Inc. ("PG.com"). On the same day, each of the Debtors filed an application to employ Schafer & Weiner, PLLC ("Schafer") as its counsel. A creditor, Ronald N. Silberstein, filed an objection to these applications. Silberstein is the former chief financial officer of each of the Debtors and holds a judgment against each of the Debtors for $1,320,168 that he obtained from the Oakland County Circuit Court in a wrongful termination lawsuit. He is the largest non-insider unsecured creditor in all four cases. A hearing was scheduled on the four applications for January 10, 2007. In the meanwhile, the Debtors filed and the Court granted a motion to jointly administer these four cases.

At the hearing on January 10, 2007, an attorney from Schafer informed the Court that the Debtors were intending to file amended applications for employment and Schafer was intending to file amended affidavits in each of the four cases to provide disclosure of additional facts that Schafer had learned about the relationships among the Debtors. Therefore, rather than rule on the applications and objections at that time, the Court set a deadline for the Debtors to file the amended applications, for Schafer to file the amended affidavits, and for Silberstein to supplement his objections if he chose to do so. The hearing was rescheduled for January 17, 2007. Before that hearing, the Debtors filed amended applications and Schafer filed amended affidavits in each of the four cases. Silberstein also filed a supplement to his objections.

Schafer's second amended affidavit filed in each of the four cases on January 15, 2007

describes numerous inter-company debts, claims and transactions among the four Debtors. It acknowledges a debt of $4,500,000 owing by PGA to PGI, refutes Silberstein's allegations of a fraudulent sale of intellectual property by PGI to PGA for $9,500,000, and identifies various other substantial inter-company debts and relationships.

At the January 17, 2007 hearing, Schafer requested three things: first, that the Court grant the application filed by PGA, which is the primary operating entity among the four Debtors; second, that the Court permit the other three Debtors to have an opportunity to present testimony at an evidentiary hearing to support their applications to employ Schafer; and third, that the Court permit the other three Debtors to file a memorandum of law in response to the supplemental objections that were filed by Silberstein on the evening before the January 17, 2007 hearing. At the conclusion of the hearing, the Court granted the application filed by PGA to employ Schafer, in part because Silberstein was no longer objecting to Schafer's appointment in that case. In addition, the Court granted Schafer's request for the other three Debtors to have an opportunity to introduce evidence and to file a memorandum of law in response to Silbertstein's supplemental objections. The Court also granted Silberstein's request to file yet another supplement to his objections. The evidentiary hearing was scheduled for January 22, 2007.

Prior to the evidentiary hearing, the Debtors and Silberstein supplemented their pleadings. At the evidentiary hearing, Silberstein continued to object to the Debtors' applications for employment of Schafer in the three cases other than PGA. Comerica Bank, a creditor in all four cases, appeared in support of the three Debtors' applications to employ Schafer. The U.S. Trustee did not appear at the hearing because it had informed the Court on January 10, 2007 that it did not object to the Debtors' applications to employ Schafer in all four cases. Finally, two other creditors

-3-

06-59289-pjs    Doc 90    Filed 02/16/07    Entered 02/16/07 14:08:03    Page 3 of 20

of PGI, Henry Hooker and Bradford Hooker, appeared at the evidentiary hearing in support of the Debtors' applications to employ Schafer in the three cases at issue.

The Debtors called one witness at the evidentiary hearing, Robert Merget. Merget testified that he is the vice president and general manager of all four Debtors and has served in those capacities since March, 2006. He further testified that he handles all of the day to day operations for the four entities and that the schedules of assets and liabilities and statements of financial affairs filed in each of the four cases, admitted into evidence as exhibits 1 through 4, were prepared by him or under his supervision. Merget testified that Ajay is a publicly traded holding company that generates no revenue and has one significant asset: its stock in PGI.[2] Merget testified that PGI is a holding company that generates no revenue and whose assets consist of its stock in PGA and PG.com,[3] its claims against the other Debtors and against other non-debtor related parties, and a trademark. According to Merget and exhibit 2, PGI holds nearly $7,000,000 of claims against the other Debtors consisting of $2,024,274.34 owed to it by its parent corporation, Ajay, $4,336,523.68 owed to it by its subsidiary corporation, PGA, and $516,090.10 owed to it by its subsidiary corporation, PG.com.

Merget then described PG.com and PGA. According to Merget, PG.com's primary asset consists of a licensing arrangement from which it derives approximately $30,000 of annual revenue. PG.com's only other assets consist of a claim of $87,971.72 owed to it by Ajay and a bank account with a cash balance of approximately $13,000. Merget testified that PGA is a franchiser of retail golf stores under the name Pro Golf Discount. Unlike the other three Debtors, PGA has a significant

---

[2] Ajay Sports owns 97% of the outstanding shares of PGI.

[3] PGI owns 100% of the outstanding shares of PGA and 80% of the outstanding shares of PG.com.

operating business and generates annual revenue of approximately $2,000,000. According to Merget and exhibit 4, PGA owns trademarks and contract rights consisting of royalties from franchisees. PGA also owns other assets, including the following claims owed to it by the other Debtors: $310,897.49 owed to it by Ajay and $40,261.29 owed to it by PG.com. Merget testified further that as the only operating company generating substantial revenue, PGA is the entity that is expected to fund a plan of reorganization for all four Debtors and fund the payment of administrative expenses for each of them during the Chapter 11 proceedings.

In addition to testifying about the assets of the Debtors, Merget also testified about their liabilities. The vast majority of the debts owed by the Debtors are owed to related parties, including the other Debtors, Thomas W. Itin, the holder of 87% of the stock of Ajay, and other entities owned or controlled by Itin. Merget testified that a very high percentage of the debt owed by the Debtors to non-related creditors was owed jointly by all of the Debtors. Merget also testified that although the schedules of assets and liabilities for the Debtors reflect various secured debts owing to Itin or to entities owned or controlled by him, Merget had not reviewed any secured loan documents and was not aware of any UCC statements that had been filed by Itin or such entities. Nor had Merget conducted any investigation relative to the validity and enforceability of the alleged fraudulent conveyance between PGI and PGA, or any of the various related party claims and defenses that may exist with respect to any of the Debtors.

At the conclusion of the evidentiary hearing, the Court took the applications to employ Schafer as counsel for the three Debtors other than PGA under advisement. On January 29, 2007, at a Chapter 11 status conference previously scheduled in each case, the Court denied the applications filed by Ajay, PGI and PG.com. This opinion explains the Court's denial of the three applications.

-5-

4. Positions of the Parties

Silberstein asserts that Schafer's disclosure of facts in support of its applications is deficient. More importantly, even with the increased disclosure in Schafer's second amended affidavits, because of the substantial and adverse claims that each of the Debtors have against one another, Silberstein argues that Schafer is ineligible to be employed by any of the Debtors other than PGA. According to Silberstein, Schafer represents an interest adverse to the PGA estate and is not disinterested under § 327(a). Silberstein also claims that Schafer has an actual conflict of interest that disqualifies it under § 327(c) of the Code. Schafer asserts that it has made full disclosure in its second amended affidavits, it is disinterested and does not represent an interest adverse to PGA under § 327(a), and while it may have a potential conflict of interest because of the Debtors' inter-company claims against one another, it has no actual conflict under § 327(c) that prevents the Court from approving its employment by the other three Debtors as well as by PGA.

5. Applicable Rules and Statutory Law

Section 327 of the Bankruptcy Code authorizes and governs employment of attorneys and other professional persons by a debtor. Section 327(a) provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). To qualify for employment under § 327(a), the professional person must, among other things, be disinterested. "Disinterested person," as defined in § 101(14), means any person that:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). In addition to the disinterested requirement, a trustee, or debtor in possession subject to § 1107(a), may only employ a professional person who does not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a).

Section 327(c) limits § 327(a) by providing that the representation of or employment by a creditor does not, in and of itself, disqualify a professional person from employment absent an objection from another creditor or the United States trustee and an actual conflict of interest. That section provides:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

To facilitate the court in ascertaining whether a professional person is eligible for employment under these statutory provisions, the Bankruptcy Rules require the applicant to disclose all known connections between the professional proposed to be retained and the debtor, creditors, and any other party in interest. Bankruptcy Rule 2014(a) provides:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the

> debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

In addition, L.B.R. 2014-1 (E.D.M.) contains similar language regarding an application for approval of the employment of a professional and requires disclosure of all connections between a professional and associates of the professional with the debtor, creditors, or any other party in interest, their respective attorneys and accountants as required by Bankruptcy Rule 2014(a).

### 6. Analysis

The burden of proving that a professional person is eligible for employment rests upon the applicant. Needler v. Rendlen, (In re Big Mac Marine, Inc.), 326 B.R. 150, 154 (8th Cir. BAP 2005); In re Genlime Group, L.P., 167 B.R. 449, 451 (Bankr. N.D. Ohio 1994). To meet this burden the applicant must disclose, by way of a verified statement required by Bankruptcy Rule 2014(a), all of the professional's connections to the debtor, creditor, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The purpose of Rule 2014(a) is to provide the court and parties in interest a mechanism by which they may conduct an informed review of an application for the appointment of professional persons so that the employment of those professionals with conflicts will not be approved. All known facts relevant to the professional person's disinterestedness must be revealed so that the court may make a determination of whether the retention of the professional is authorized. In re Leslie Fay Companies, Inc., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). Failure to adequately disclose information relating to a professional person's disinterestedness may lead to sanctions,

-8-

06-59289-pjs    Doc 90    Filed 02/16/07    Entered 02/16/07 14:08:03    Page 8 of 20

including disqualification or disallowance of fees for services and reimbursement of expenses. Id.

Schafer's original affidavits filed in each of these cases failed to adequately describe the various inter-company claims. An attorney from Schafer explained at the January 10, 2007 hearing that this was due to the very recent retention of Schafer by the Debtors and that Schafer was still in the process of investigating all of the inter-company relationships. It was for this reason that Schafer requested on January 10, 2007 that the Court adjourn the hearing so that Schafer could file amended, complete affidavits. Schafer filed those affidavits in each case on January 15, 2007, consistent with its duty of continued disclosure. In re West Delta Oil Company, Inc., 432 F.3d 347, 355 (5th Cir. 2005). The Debtors' applications to employ Schafer that are now before the Court are based upon the second amended affidavits. The Court has reviewed the second amended affidavits, finds that they comport with the requirements of Rule 2014(a), and that they adequately disclose the facts necessary for the Court to determine Schafer's eligibility for employment. The Court therefore overrules Silberstein's objections to the Debtors' applications to employ Schafer to the extent that they are based upon inadequate disclosure.

A debtor in possession may select its own attorney subject to approval by the court. In re Doors and More, Inc., 126 B.R. 43, 44 (Bankr. E.D. Mich. 1991). Disqualification is disfavored and it is only in the rare case that a debtor will be denied the privilege of selecting its own counsel. Id. at 44. With that in mind, the Court has broad discretion over the appointment of professionals to work on behalf of the bankruptcy estate. Harold & Williams Development Company v. United States Trustee (In re Harold & Williams Development Co.), 977 F.2d 906, 909 (4th Cir. 1992). Such discretion is tempered, however, by the language of § 327(a) and (c). Further, the bankruptcy court is prohibited from using its equitable powers under § 105 to circumvent the unambiguous statutory

language of § 327 to appoint a professional person if such professional is not shown to meet the requirements of the statute. Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. Partnership), 934 F.2d 723, 725 (6th Cir. 1991).

To be disinterested under § 327(a) a person must satisfy § 101(14). First, under § 101(14)(A), such person cannot be a creditor, equity security holder, or an insider. Second, under § 101(14)(B), such person cannot be, nor was within two years before the filing of the bankruptcy petition, a director, officer, or employee of the debtor. Third, under § 101(14)(C), such person cannot have an interest materially adverse to the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. Schafer's amended affidavits in support of the Debtors' applications to hire it as counsel for Ajay, PGI and PG.com attest that Schafer meets the first two requirements of disinterestedness under § 101(14)(A) and (B) in that Schafer is not a creditor, equity security holder, insider, and is not nor was not within the prior two years a director, officer, or employee of any of the Debtors. The harder questions are whether Schafer's representation of all four Debtors would mean that Schafer is disinterested under § 327 (a) as defined by § 101(14)(C), represents an interest adverse to the estate under § 327(a), or has an actual conflict of interest under § 327(c).

The Code does not define what constitutes "an interest adverse to the estate" or an "actual conflict of interest." Case law has defined "an interest adverse to the estate" to mean either "(1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." In re Granite Partners, L.P., 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). The phrase has also been described as including "any interest or relationship,

however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." Id. (internal quotation marks and citations omitted). An "actual conflict" has been defined as involving "two presently competing and adverse interests." In re American Printers & Lithographers, Inc., 148 B.R. 862, 866 (Bankr. N.D. Ill. 1992). Contrast that to a potential conflict that occurs where the dispute "may become active if certain contingencies arise." Id. While some courts have recognized a distinction between actual and potential conflicts, others have not, focusing instead on "concerns of divided loyalties and affected judgments." In re Granite Partners, L.P., 219 B.R. at 33.

If Schafer is appointed as attorney for any Debtor in addition to PGA, then Schafer will represent, simultaneous with its representation of PGA, an entity that is either indebted to PGA (i.e., Ajay and PG.com) or an entity that has a claim against PGA (i.e., PGI). In addition, if Schafer is appointed as attorney for PGI, then Schafer will simultaneously represent both the transferor and the transferee of an alleged fraudulent conveyance action for $9,500,000. The Court must determine whether dual representation in these circumstances constitutes "an interest adverse to the estate" or whether it creates an "actual conflict of interest" in violation of the Code. Silberstein argues that § 327 imposes a per se prohibition against simultaneous representation whenever inter-company debts place the estates in a creditor/debtor relationship with one another. Both Silberstein and the Debtors state that there is no Sixth Circuit case that addresses the precise fact situation involving simultaneous representation of jointly administered corporate debtors where inter-company debt is present among them, but each of them cite to opinions from other courts.

Silberstein relies heavily on Interwest Business Equipment, Inc. v. United States Trustee (In re Interwest Business Equipment, Inc.), 23 F.3d 311 (10th Cir. 1994), in support of his argument for

-11-

a per se prohibition. In Interwest Business Equipment, the court addressed whether a single law firm could jointly represent three inter-related debtors in possession. Affidavits filed by the law firm disclosed three substantial inter-company debts but disclosed little else. The bankruptcy court denied the application for employment, finding that the law firm was not disinterested. Id. at 314. The bankruptcy court also found an actual conflict of interest arose and wrote: "The existence of a prepetition debt *from one estate to the other* creates a disqualifying conflict of interest. These interlocking interests can only be served by utilizing separate counsel who can fairly and fully advise each debtor as to its rights and responsibilities." Id. (internal quotation marks and citations omitted). The district court affirmed and the debtors appealed to the Tenth Circuit Court of Appeals. On appeal, the Tenth Circuit reviewed the denial of the application for professional employment under an abuse of discretion standard and affirmed the district court and bankruptcy court decisions. Id. at 318-19. Significantly, despite the creditor's arguments, the court noted that it was not announcing a per se prohibition against simultaneous representation of multiple debtors where inter-company debt is present. Instead, the court recognized that applications in such circumstances must be evaluated on a case by case basis. The court explained:

> Because of their experience and their familiarity with the cases, bankruptcy judges bring a unique expertise to the question of when simultaneous representation of multiple estates and their creditors is a conflict that works to the detriment of the estate in bankruptcy, its creditors or to the detriment of the public confidence in the integrity of the bankruptcy system. Thus, we will not second guess a decision not to approve professionals under § 327 unless it exhibits a clear abuse of discretion, circumstances not present in the case at hand. By our decision today, we do not hold such simultaneous representation of related estates in bankruptcy is per se prohibited. Instead, each such application must be evaluated on its own merits.

Id. at 318-19.

Silberstein also relies upon Tri-State Leasing Corp. v. United States Trustee (In re Coal River

-12-

Resources, Inc.), 321 B.R. 184 (W.D. Va. 2005). Here, the district court affirmed a bankruptcy court's decision to deny applications for employment of one attorney by multiple debtors where inter-company debt was shown to exist. Although the court held that a single attorney could not represent the interests of each debtor, this court too rejected the notion of a per se prohibition in such circumstances, explaining that "[t]he Fourth Circuit encourages 'fact-intensive inquiry,' and cautions against establishing new per se rules in conflict of interest cases." Id. at 187-88.

A further review of case law shows that bankruptcy courts have struggled with the issues that arise out of representation of multiple debtors where inter-company debt is present. In In re Global Marine, Inc., 108 B.R. 998 (Bankr. S.D. Tex. 1987), a parent company and 13 of its subsidiaries filed chapter 11 petitions that were consolidated and jointly administered by the bankruptcy court. Each of the debtors, except one, were represented by the same law firm. A creditor objected to the law firm's representation for various reasons, including the existence of inter-company debt among them. Acknowledging that inter-company claims in and of themselves did not require disqualification, the court provided the following discussion:

> Precedent indicates that the mere existence of an intercompany claim does not in and of itself constitute an impermissible conflict of interest that would justify disqualification or denial of compensation. This Court believes there is a fundamental distinction between the "potentially" conflicting interests that may arise in every instance of joint representation and an "actual conflict of interest" as envisioned by § 327(c). The representation of entities with potentially conflicting interests does not violate § 327(c).

Id. at 1004. The court noted that the debtors "functioned as one enterprise" and that during the course of representation "there . . . existed a unity of interest and singleness of purpose . . . ." Id. Concluding that the inter-company debt did not rise to the level of an actual conflict, the court wrote:

> This Court acknowledges that there is a potential for conflict; however, the

-13-

mere existence of the intercompany claim between [the Debtors] does not at this point elevate the situation to one of an actual conflict of interest requiring the disqualification of [counsel] from representing either [of the Debtors] . . . . Should the conflict between [the Debtors] become open and ongoing as opposed to dormant, the problem may at such time be resolved by among others, the appointment of special counsel . . . . To act at this time in a preemptive manner would only result in the interruption of the orderly administration of these Debtors' bankruptcy proceedings and cause them to incur unnecessary expense.

Id.

In In re BH & P, Inc., 949 F.2d 1300 (3rd Cir. 1991), a corporation and two of its principals each filed bankruptcy. The cases were jointly administered. The same trustee was appointed in all three cases and filed applications for employment of the same counsel in each of the three cases. A creditor objected to the payment of compensation to the trustee or his counsel claiming an actual conflict of interest under § 327(c). The Court began its analysis of § 327(c) by noting that, as amended in 1984, § 327(c) focused the inquiry upon whether there was an actual conflict of interest.

> The term "actual conflict of interest" is not defined in the Code and has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context. Courts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists "in light of the particular facts of each case."

Id. at 1315. Rejecting a per se rule, the court went on to describe some of the factors a bankruptcy court should consider when reviewing requests for representation of multiple debtors in cases with inter-company debt. The court wrote:

> This flexible approach will require the bankruptcy courts to analyze the factors present in any given case in order to determine whether the efficiency and economy which may favor multiple representation must yield to competing concerns affecting fairness to all parties involved and protection of the integrity of the bankruptcy process. Factors to be considered include, but are not limited to, the nature of disclosure of the conflict made at the time of appointment, whether the interests of the related estates are parallel or conflicting, and the nature of the interdebtor claims made.

-14-

Id. at 1316.

In In re Amdura Corp., 121 B.R. 862 (Bankr. D. Colo. 1990), the court considered the totality of the circumstances and held that counsel represented interests adverse to the interests of each debtor. The following discussion is relevant:

> What counsel would have this Court do is to recognize the realities of the commercial world where one attorney or one firm routinely provides legal representation for an entire corporate family. Such representation recognizes a unity of interest and purpose and is likely to be more efficient and cost effective. But that is not the circumstance before the Court. Here we have entities which are unable to pay their creditors, perhaps some more so than others. Here we have entities which have sought the protection of this Court and the authority of those entities to operate as a unit is circumscribed by the Code.
>
> This Court is not insensitive to the suggestions which have been made that to change counsel at this juncture will be disruptive. However, it would be even more disruptive to have to take the step of disqualifying counsel six months from now in the midst of reorganization negotiations when the "actual" conflict emerges. Nor is this Court insensitive to the possibility of increased administrative costs, but such concerns cannot excuse compliance with the strict letter of the law.

Id. at 868-69.

More recently, the court in In re Adelphia Communications Corp., 336 B.R. 610 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006), also rejected a per se rule that would preclude representation of multiple debtors with inter-company debt under § 327(c) and instead adopted a case by case approach. The bankruptcy court observed that an absolute rule would "represent a sea change in the law and in chapter 11 practice, with a highly destructive effect on the manner in which multi-debtor chapter 11 cases are run." Id. at 619. On appeal, the district court affirmed the bankruptcy court's ruling, reiterating that the presence of inter-company claims between chapter 11 debtors represented by the same counsel did not automatically warrant disqualification of counsel. In re Adelphia Communications Corp., 342 B.R. at 128. The following discussion is contained in the

-15-

bankruptcy court opinion:

> The presence of interdebtor conflicts, which is characteristic of nearly every large multi-debtor chapter 11 case, does not by itself require the appointment of trustees or nonstatutory fiduciaries for each of the affected debtors. If there ever were such a rule, it would paralyze chapter 11 practice, and result in untold damage to the recoveries of creditors.

In re Adelphia Communications Corp., 336 B.R. at 678.

The pattern that emerges from these cases suggests that simultaneous representation of multiple debtors where inter-company debts are present raises the potential for disqualification under § 327(a) and (c). In this Court's view, the proper means of analyzing these issues is the case by case, fact specific inquiry described in and adopted by Interwest Business Equipment, In re BH&P, and In re Adelphia Communications. In so holding, the Court rejects the per se approach urged by Silberstein.

Applying this approach to these cases, the evidence establishes that these four Debtors operate essentially as one business enterprise, with one common equity holder, Itin. A unity of business enterprise and purpose appears to exist among these Debtors. With one exception, the Debtors obligated under the inter-company debts do not presently contest their liability. Nor do those Debtors that hold claims against one another seek, at this time, to enforce those claims. This may be true because, as evidenced by Merget's uncontroverted testimony, there are no assets that two of the Debtors, Ajay and PGI, could use to pay those claims, and only limited assets that a third Debtor, PG.com, could use to pay claims. These facts, when viewed together, arguably weigh in favor of granting the Debtors' applications.

On the other hand, the uncontroverted testimony establishes that there are multiple inter-company debts among the Debtors, with every one of the Debtors being either a creditor or debtor,

or both, of the others. This is not a case with one or few inter-company debts among one or two jointly administered debtors. Further, this is not a case where the inter-company debts are small in comparison to other debts in those cases. Instead, the claims of the Debtors against one another here dwarf all other claims in these cases except for the claims of other insiders, the secured lender Comerica Bank, and the objecting creditor, Silberstein. Nor is this a case in which the gross dollar amounts of these inter-company debts is small. Ajay's schedules (exhibit 1) show that it is indebted to PGI in the amount of $2,024,274.34 and to PGA in the amount of $310,897.49. Those are the two largest unsecured claims against it other than Silberstein. PGI's schedules (exhibit 2) show that PGI is entitled to collect an aggregate sum in excess of $7,000,000 from Ajay, PGA and PG.com. PG.com's schedules (exhibit 3) show that it is indebted to PGI in the amount of $516,090.10 and to PGA in the amount of $40,261.29. Those are the two largest unsecured claims against it other than Silberstein. PGA's schedules (exhibit 4) show a debt to PGI in the amount of $4,336,523.68. That is by far the largest unsecured claim against PGA. In each case, the inter-company debts are large in both a relative sense and an absolute sense.

In addition to the substantial claims that the Debtors hold against one another, Merget's testimony and the schedules of assets and liabilities introduced into evidence also demonstrate the presence of significant insider claims held by Itin and/or entities owned or controlled by him against each of the Debtors. Despite there having been no verification as to their secured status, the evidence showed that these claims were listed as secured claims on each of Debtors' schedules. The salient point here is that these cases are marked by a predominance of inter-company claims and debts among insiders or related parties, including both non-debtors and the Debtors. The presence of so many inter-company debts among the Debtors, and the presence of so many insider claims held by Itin

and/or entities controlled by him are all facts to be considered in reviewing Silberstein's objections. Another fact that further complicates matters is the absence of any investigation by Merget regarding the validity of the secured claims of the Itin controlled insiders and whether they may have perfected their interests in assets of the Debtors.

Further, Silberstein alleges that PGA holds a substantial fraudulent conveyance action against PGI for $9,500,000 arising out of a sale of intellectual property. This may well be a pivotal issue in these cases because PGA's schedules (exhibit 4) show that the largest asset of PGA is its interest in a "trademark" valued by PGA on its schedules at $9,564,878.79. Although Schafer's affidavits dispute the existence of a fraudulent conveyance cause of action relating to PGA's intellectual property, Merget did not provide any testimony that he has conducted any investigation or made any determination about the viability of such alleged cause of action. Schafer's conclusory assurance to the Court that such action does not exist, although sincere, is not based on any investigation or hard evidence that a fraudulent conveyance does not exist. Given Silberstein's former position with the Debtors as their chief financial officer, his allegations regarding a potential fraudulent conveyance action need to be seriously considered by the Court.

On balance, employing a fact specific inquiry and after a careful consideration of the applications, affidavits, and the specific relationships and facts in this case, the Court is persuaded that the evidence establishes that Schafer's simultaneous representation of PGA and PGI creates an actual conflict of interest because those Debtors have presently competing interests regarding the alleged fraudulent conveyance action. That fact renders Schafer ineligible to represent both PGA and PGI under § 327(c). For that reason alone, the Court denies Schafer's application to represent PGI. Further, although the fraudulent conveyance action is alleged to exist only vis-a-vis PGA and PGI,

the Court considers that fact to also have importance in the fact specific inquiry that the Court is instructed by the case law to perform regarding Schafer's eligibility to represent Ajay and PG.com as well. PGI is owned by Ajay and has claims against both Ajay and PG.com. In the Court's view, the combination of the prevalence of inter-company debts among all four Debtors, coupled with the uninvestigated and substantial fraudulent conveyance action alleged to exist between PGA and PGI, creates an actual conflict of interest that renders Schafer ineligible to represent any of these Debtors other than PGA under § 327(c) of the Bankruptcy Code. Because it concludes that Schafer is ineligible to represent any of the Debtors other than PGA under § 327(c), the Court need not reach any conclusion regarding Silberstein's objections to the extent they are based upon any violations of the provisions of § 327(a). Accordingly, as the Court has already granted PGA's application to employ Schafer, the Court denies the applications of the other three Debtors to employ Schafer.

In reaching this decision, the Court is not unmindful of practical considerations. In the increasingly complex world of business it is not uncommon to have multiple business entities file Chapter 11 petitions and request joint administration of the cases. Often, these jointly administered debtors share facilities, operations and single cash management systems. Not uncommonly, various inter-company debts exist among them because of the manner in which their businesses are structured. It is stating the obvious to note that the cost of professional fees in Chapter 11 cases is substantial and that there are efficiencies and economies that can be realized by having a single set of professionals for these jointly administered debtors. Yet, as evidenced by the cases cited in this opinion, the presence of inter-company debt has led some bankruptcy courts to deny approval of the employment of a single set of professionals for multiple debtors in some circumstances, while others have approved of such employment in similar circumstances. What is clear to this Court from the

cases discussed in this opinion, is that the issue does not lend itself neatly to a bright line rule. The Court must address each case on its merits, applying the law to the specific facts of each individual case. In this case, after carefully reviewing all of the facts in the record, including the various inter-company debts and the alleged fraudulent conveyance claim, and the testimony surrounding them, for the reasons explained the Court denies the applications of Ajay, PGI and PG.com to employ Schafer.

**Not for Publication**

**Signed on February 16, 2007**

　　　　　　　　　　　　　　　　　　　　**/s/ Phillip J. Shefferly**
　　　　　　　　　　　　　　　　　　　　**Phillip J. Shefferly**
　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**