UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Ajay Sports, Inc., et al.,[1]                                Case No. 06-59289
                                                                           Chapter 11
                          Debtors.                      Hon. Phillip J. Shefferly
_____/

## OPINION DENYING DEBTORS' OBJECTION TO CLAIM

### Introduction

This opinion addresses the application of § 502(b)(7) of the Bankruptcy Code to a proof of claim filed by a creditor, Ronald N. Silberstein. The Debtors assert that § 502(b)(7) applies and that a substantial portion of Silberstein's claim must therefore be disallowed. Silberstein contends that § 502(b)(7) does not apply and that his claim should be allowed in full. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). For the reasons set forth in this opinion, the Court holds that § 502(b)(7) does not apply to Silberstein's claim and therefore the Debtors' objection must be denied.

### Facts

The facts relevant to the Debtors' objection are not in dispute. Silberstein was the chief financial officer of the Debtors. Silberstein did not have a written employment contract. The parties agree that he was an "at will" employee. On January 5, 2004, the Debtors terminated Silberstein's services. On January 22, 2004, Silberstein filed suit in Oakland County Circuit Court. Silberstein's complaint contained three counts. Count I alleged that Silberstein's discharge by the Debtors was

---

[1] Jointly administered with ProGolf.com, Inc., Case No. 06-59292, Pro Golf International, Inc., Case No. 06-59290 and Pro Golf of America, Inc., Case No. 06-59291.

in violation of public policy under Michigan law even though he was an at will employee. Specifically, Silberstein alleged that his discharge was in retaliation because Silberstein had refused to accede to the Debtors' request that he violate various federal laws, including federal securities laws and regulations and federal trade commission laws and regulations, by improperly recording various accounting transactions on the Debtors' books and records. Silberstein alleged that even though he was an at will employee, public policy under Michigan law does not permit an employer to discharge an employee because of such employee's refusal to violate a law in the course of his or her employment. Count II of Silberstein's complaint alleged tortious interference with a business relationship and was brought only against Thomas Itin, a shareholder and principal of the Debtors. Count III of Silberstein's complaint alleged conversion by all of the Debtors and Itin. Counts II and III of Silberstein's complaint were dismissed by the Oakland County Circuit Court. Count I is the only count that proceeded to trial.

On October 6, 2006, at the conclusion of the trial in Oakland County Circuit Court, the jury rendered a unanimous verdict in favor of Silberstein and against the Debtors. The jury verdict contained two questions. The first question asked:

> Do you find by a preponderance of the evidence that one of the reasons for Plaintiff Ronald Silberstein's discharge was his failure or refusal to violate the law in the course of his employment?

The jury answered "Yes" to this question.

The second question in the jury verdict asked:

> What amount of the following damages did Plaintiff Ronald Silberstein sustain as a result of Defendant's [sic] decision to discharge Plaintiff Ronald Silberstein because he failed or refused to violate the law in course of his employment?

The jury responded with "Wages/Benefits: $700,000.00" and "Mental Anguish: $150,000.00."

On November 8, 2006, the Oakland County Circuit Court entered an Amended Final Judgment. The Amended Final Judgment awarded Silberstein $1,320,168.43 against all of the Debtors, broken down as follows:

```
$   700,000.00 - wages/benefits
    150,000.00 - mental anguish
    118,775.04 - statutory interest
    290,325.00 - attorney fees
     17,939.30 - costs
     43,129.09 - statutory interest on the attorney fees and costs
$ 1,320,168.43 - total
```

On December 27, 2006, the Debtors each filed a Chapter 11 petition. On January 8, 2007, upon the request of the Debtors, the Court entered an order providing for joint administration of these cases. On April 10, 2007, Silberstein filed a proof of claim in the amount of $1,320,168.43. Silberstein attached a copy of the Amended Final Judgment to his proof of claim. On April 16, 2007, one of the Debtors, Pro-Golf of America, Inc., filed an objection to Silberstein's proof of claim. The other Debtors filed a concurrence in that objection. The objection is based upon the Debtors' assertion that § 502(b)(7) applies to Silberstein's proof of claim. On May 18, 2007, the Court conducted a hearing with respect to the objection. At the conclusion of the hearing, the Court inquired of the parties whether they wished to supplement the record before the Court. The parties advised the Court that they were satisfied that the Court had a sufficient record before it to determine the legal issue of whether § 502(b)(7) applies to Silberstein's claim. The Court then took the matter under advisement.

<u>Discussion</u>

Section 502 of the Bankruptcy Code governs allowance and disallowance of claims in a bankruptcy case. Section 502(a) provides that a claim, proof of which is filed under § 501, is deemed

-3-

06-59289-pjs    Doc 178    Filed 06/12/07    Entered 06/12/07 14:39:04    Page 3 of 14

allowed unless a party in interest objects. Section 502(b)(7) provides a cap on the allowance of a duly filed proof of claim if such claim is the claim of an employee for damages resulting from the termination of an employment contract:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
> . . .
>
> (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds –
>     (A) the compensation provided by such contract, without acceleration, for one year following the earlier of –
>         (i) the date of the filing of the petition; or
>         (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
>     (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates[.]

The first element of § 502(b)(7) is that the claimant be an employee. The parties do not dispute that Silberstein was an employee of the Debtors. The second element is that the claim be for damages resulting from "the termination of an employment contract." This element has two subparts: there must be an employment contract and the claim must be for damages resulting from termination of the employment contract. The parties differ on both of these subparts.

The Debtors concede that Silberstein did not have a written contract of employment, or a contract of employment for a definite term, and that he was an at will employee. Despite this, the Debtors contend that Silberstein still had an employment contract, under which Silberstein agreed to perform services and the Debtors agreed to pay him for those services. The Debtors also assert that even though the Amended Final Judgment awarded damages for "mental anguish," which are not ordinarily compensable under Michigan law for breach of contract, this fact is irrelevant to

-4-

determining the application of § 502(b)(7). This is because the statutory provision is not limited in its application to claims for *breach* of contract, but instead applies to any claims *resulting from the termination* of an employment contract.

On the other hand, Silberstein contends that as an at will employee he had no employment contract, and therefore his claim could not have resulted from the termination of an employment contract. Further, Silberstein argues that the Amended Final Judgment on which his proof of claim is based was awarded upon a tort claim and not a contract claim under Michigan law, which Silberstein asserts is binding upon this Court. According to Silberstein, a tort claim is not subject to the application of § 502(b)(7).

In interpreting an objection to claim under § 502(b)(1), the Supreme Court recently discussed "the settled principle that '[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.' That principle requires bankruptcy courts to consult state law in determining the validity of most claims." Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., 127 S. Ct. 1199, 1204-05 (2007) (quoting Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20 (2000)). Courts

> have long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law. Accordingly, when the Bankruptcy Code uses the word "claim"--which the Code itself defines as a "right to payment,"--it is usually referring to a right to payment recognized under state law .
> . . .

Id. at 1205 (quoting 11 U.S.C. § 101(5)(A)) (other internal quotation marks and citations omitted).

Under Michigan law, "[t]he essential elements of a contract are parties competent to contract, a proper subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." McInerney v. Detroit Trust Co., 271 N.W. 545, 546 (Mich. 1937). An employment contract is defined as "a contract between an employer and employee in which the terms and conditions of employment are stated." Black's Law Dictionary, 7th ed. at 321 (West 1999). Applying these principles, the Court concludes that even at will employees have employment contracts. An at will employee's contract simply has as one of its terms and conditions a provision that the contract is terminable at will by either party and has no definite length. That provision does not make it any less of a contract. It is still an agreement between an employer and an employee for the employee to provide services to the employer in exchange for the agreed upon rate of compensation. The absence of a definite term of employment under Michigan law means only that either party to the employment contract may terminate it at any time for any, or no, reason. See Toussaint v. Blue Cross & Blue Shield of Michigan, 292 N.W.2d 880 (Mich. 1980); Suchodolski v. Michigan Consolidated Gas Co., 316 N.W.2d 710, 711 (Mich. 1982) ("[I]n the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason.") (citation omitted). However, it does not follow that the absence of a definite term means that no employment contract exists between the parties, nor does Michigan law so hold. The Court finds that there was an employment contract between the Debtors and Silberstein.

The more difficult issue in this case is whether Silberstein's claim is for damages "resulting from the termination" of an employment contract. As noted earlier, resolution of this dispute depends upon the applicable Michigan law on which Silberstein's claim is based. Michigan courts have long recognized that, even with respect to employees at will, there are some grounds for discharging an

-6-

06-59289-pjs    Doc 178    Filed 06/12/07    Entered 06/12/07 14:39:04    Page 6 of 14

employee that are so contrary to public policy as to be actionable. In Suchodolski, the court identified three such instances. The first and most common instance is where "proscriptions are found in explicit legislative statements prohibiting the discharge . . . of employees who act in accordance with a statutory right or duty." Suchodolski, 316 N.W.2d 710, 711 (citing as examples Michigan's Elliott-Larsen Civil Rights Act, and the Whistle Blowers Protection Act). A second ground is where a "legislative expression of policy [implies] a cause of action for wrongful termination even in the absence of an explicit prohibition . . . ." Id. at 711-12 (citing Trombetta v. Detroit, Toledo & Ironton R.R. Co., 265 N.W.2d 385 (Mich. Ct. App. 1978) (employee was discharged because he refused to falsify samples for pollution control reports filed with the state)). Finally, a third basis where Michigan courts have found a cause of action for discharge is "when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment." Id. at 712 (citing an employee having filed a worker's compensation claim as an example).

Silberstein's claim against the Debtors, as described in Count I of his state court complaint, is based on his assertion that he was wrongfully discharged in violation of public policy because he refused to violate the law by "cooking the books" of the Debtors in a manner that would have been contrary to federal laws and regulations. This is an action within the second category identified by Suchodolski: where a legislative expression of policy has been found that implies a cause of action, even in the absence of an explicit statutory prohibition, and even in the case of an at will employee. Michigan law recognizes a cause of action in favor of an at will employee who is discharged because the employee refused to violate the law in the course of his or her employ. See Trombetta v. Detroit, Toldeo & Ironton R.R. Co., 265 N.W.2d 385, 388 (Mich. Ct. App. 1978).

Although the existence of a cause of action for discharge of an employee in violation of public

-7-

policy is well settled under Michigan law, one issue that has arisen with respect to such causes of action is whether they are tortious or contractual in nature. For some time, there was a split of authority under Michigan case law. See Phillips v. Butterball Farms Co., 531 N.W.2d 144, 147 n.15 (Mich. 1995) (discussing the split in Michigan Court of Appeals panels). That split was resolved by the Michigan Supreme Court in 1995.

In Phillips v. Butterball Farms, the Michigan Supreme Court discussed in detail the nature of an action for discharge of an employee in violation of public policy in Michigan, and addressed whether such actions are based upon contract or tort. In that case, the employee was an at will employee who brought an action against her former employer claiming that she was discharged for exercising her rights under the worker's compensation act. Id. at 144. The issue was whether as an at will employee, the plaintiff's damages were limited to lost wages or could also include damages for mental or emotional distress. Id. at 144-45. The court's starting point was the rule in Michigan that the employment contract of an at will employee may be terminated by either party at any time for any or no reason at all. Id. at 145-46 (citation omitted). The court then noted that Michigan law recognizes that "'some grounds for discharging an employee are so contrary to public policy as to be actionable.'" Id. at 146 (quoting Suchodolski, 316 N.W.2d 710). "In addition to statutory causes of action for violation of explicit prohibitions, causes of action have been implied where the employee was discharged for failure or refusal to violate a law in the course of employment." Id. (footnotes omitted). The employer argued that even in those circumstances, it is still the contractual relationship that gives rise to any cause of action because "[i]mplied in every contract . . . is a promise not to contravene public policy." Id. at 147. According to the employer, the cause of action was an action "in contract because the right not to be discharged arises out of a promise implied in the employment

-8-

contract." Id.

In rejecting this argument, the Butterball court characterized the cause of action based on public policy as a retaliatory discharge claim, and reasoned as follows:

> This argument ignores that the source of this right against retaliatory discharge does not stem from any term agreed upon by the contracting parties, but from public policy now expressed in a statute. *The duty not to retaliate against an employee for filing a worker's compensation claim arises independently from the employment contract.*

Id. at 147 (emphasis added).

Citing cases from other jurisdictions, the Butterball court then observed that

> [m]any states now recognize a cause of action for retaliatory discharge of an employee who has filed a worker's compensation claim. The vast majority hold that such an action is grounded in tort on the basis of a public policy exception or express statutory proscription.

Id., n.21. The court concluded its analysis as follows:

> While the contractual relationship was "at will," *the contractual relationship is not the source of an employee's right to protection against retaliatory discharge* for filing a worker's compensation claim. The right stems not from an implied promise by the employer, but from the statute. A cause of action seeking damages from an employer who violates the worker's compensation act *is independent of the contract, and sounds in tort, not contract.*

Id. at 148 (emphasis added). Although mental and emotional distress damages are not compensable in Michigan for breach of an employment contract, such damages were recoverable by the plaintiff in Butterball, even though she was an at will employee, because "[r]ecovery under the public policy exceptions to the employment at-will doctrine arises independently of the employment contract." Id. at 150.

Phillips v. Butterball makes clear that in Michigan, an action for a discharge of an employee

-9-

in violation of public policy is an action in tort, not contract.[2]  It is irrelevant that the retaliatory discharge of Silberstein was for his refusal to violate a law in the course of his employment, rather than for filing a worker's compensation action.  Although Butterball addressed the third basis for a retaliatory discharge cause of action described by the Suchodolski court, the Butterball court's analysis and holdings clearly encompassed all three exceptions.  Michigan case law recognizes a cause of action for retaliatory discharge as a violation of public policy where the discharge was because the employee refused to violate a law during the course of employment.  Further, that cause of action falls under Michigan tort law, and not contract law.

Even if Silberstein's claim is based upon tort law in Michigan, the Debtors counter that § 502(b)(7) is broad enough to include even damages for a tort so long as such damages *resulted from termination* of the employment contract.  In support of that position, the Debtors cite no controlling or factually apposite case law.  More importantly, whatever the outer theoretical limits of § 502(b)(7) may be, an examination of Silberstein's state court complaint, jury verdict and Amended Final Judgment demonstrates that his claim simply did not result from termination of his employment contract.  Silberstein's state court complaint against the Debtors went to trial only on Count I.  That count alleged that the Debtors wrongfully discharged Silberstein because Silberstein refused to violate the law, i.e., for refusing to "cook the books" of the Debtors.  Count I alleged that

---

[2] Some cases have characterized the three grounds for retaliatory discharge based on public policy as an "exception" to the general rule that an at will employee may be discharged for any reason.  See, e.g., Suchololski, 316 N.W.2d 710, 711 (finding "an exception has been recognized" to the "rule" that "either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason").  Rather than characterizing a tort action as somehow being an "exception" to a rule of contract law, it may be conceptually more accurate to simply think of retaliatory discharge actions as being "independent" of the employment contract, as explained in Butterball.

-10-

the Debtors' conduct was "tortious" and that the Debtors' tortious conduct caused Silberstein damages. Count I did not even allege the existence of an employment contract, or the breach of an employment contract. The jury verdict did not ask whether the Debtors violated an employment contract with Silberstein. Nor did the jury verdict ask whether the Debtors caused Silberstein to suffer damages by reason of a violation of an agreement not to terminate an employment contract with Silberstein. To the contrary, Silberstein's jury verdict asked only whether there was a preponderance of evidence to demonstrate that "one of the reasons for . . . Silberstein's discharge was his failure or refusal to violate the law in the course of his employment." Compare Bitters v. Networks Electronic Corp. (In re Networks Electronic Corp.), 195 B.R. 92, 95 (B.A.P. 9th Cir. 1996) (capping damages based on § 507(b)(7) where the claimant's lawsuit included both tortious and contractual claims, but the jury verdict was based only on violations of the employment agreement and damages caused by that violation), with Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (declining to cap damages upon reviewing the nature of an employee's claim and determining that the damage issue was presented to the jury solely on the tort causes of action and not for breach of the employment contract, and therefore holding that § 502(b)(7) did not apply).

It is true that the jury verdict and the Amended Final Judgment both include a component of damages for "wages/benefits." However, both the jury verdict and the Amended Final Judgment reveal that there were a number of other components of Silberstein's damages. One component was the $150,000 awarded for mental anguish. Damages for mental anguish are not compensable in Michigan for breach or termination of an employment contract. See Valentine v. General American Credit, Inc., 362 N.W.2d 628, 629 (Mich. 1984); Kewin v. Massachusetts Mutual Life Insurance Co., 295 N.W.2d 50, 53 (Mich. 1980). That the jury verdict awarded mental anguish damages compels

-11-

the conclusion that Silberstein's claim just does not result from termination of his employment contract. See In re Visiting Nurse Ass'n, 176 B.R. 748, 751-53 (Bankr. E.D. Pa. 1995) (rejecting the debtor's argument that, because the claim was "essentially" a claim for wages, the § 502(b)(7) cap applied, and instead looked to the nature of the claim being a retaliatory discharge claim based on the employee's refusal to falsify Medicare claims in holding that the claim was not subject to the cap).

The Debtors correctly note that Silberstein was an employee and that he had an employment contract. However, a review of Silberstein's complaint, the jury verdict and the Amended Final Judgment, all lead to the conclusion that Silberstein's action against the Debtors in Oakland County Circuit Court and the Amended Final Judgment in that action were based upon tort and not contract. Careful inspection of the state court record, as well as applicable Michigan case law, demonstrates that the damages awarded to Silberstein were not on account of, nor did they result from, breach or termination of any employment contract, but rather were awarded based upon the recognized tort in Michigan law for discharge in violation of public policy. "The duty not to retaliate against an employee . . . arises independently from the employment contract." Phillips v. Butterball, 531 N.W.2d 144, 147. It follows that the damages that result from that tort are independent of the existence of any employment contract.

Where the statutory language is clear, the proper role for the Bankruptcy Court is to apply it as written. The Court need only look at legislative history where the law is ambiguous and resort to legislative history can assist the Court in applying the law. That is not the case here. The Court considers § 502(b)(7) to apply on its face only to claims for damages resulting from termination of an employment contract and an examination of the action brought by Silberstein convinces the Court

-12-

that the damages that were awarded to him resulted from a tort and did not result from termination of an employment contract. Nonetheless, it is still helpful to note that the Court's conclusion in this regard is consistent with the policies that are articulated in § 502(b)(7) as reflected by its legislative history. In discussing this legislative history of this provision, the court in <u>U.S. Truck Co. v. Teamsters National Freight Industry Negotiating Committee</u> (<u>In re U.S. Truck Co.</u>), 89 B.R. 618 (E.D. Mich. 1988) noted that "[t]his clause is intended principally to apply to long-term contracts providing substantial compensation to management executives of corporate debtors." 89 B.R. at 627 (relying on "the report of the Commission on the Bankruptcy Laws of the United States, which originally proposed this exception and whose draft was adopted almost word for word") (internal quotation marks and citation omitted).

Similarly, the Court in <u>In re Gee & Missler Services, Inc.</u>, 62 B.R. 841 (Bankr. E.D. Mich. 1986) described the purpose of § 502(b)(7) as follows:

> Section 502(b)(7) was designed, as commonly assumed, to limit the claims of key executives - employees, who for one reason or another, were able to exact long-term contracts calling for substantial remuneration. . . .
>
> . . .
>
> The thrust of section 502(b)(7) is to limit claims arising out of the rejection of an executory contract. Section 502(b)(7) limits a claim for future compensation, which conceivably would have been earned had the parties continued to perform under the terminated contract.

62 B.R. at 844-45. Although not necessary to its holding, in the Court's view, Silberstein's claim for tort damages under Michigan law is not the type of claim that § 502(b)(7) was intended to cap.

Because Silberstein's claim is not based upon damages resulting from termination of an employment contract, it is not within § 502(b)(7). Accordingly, the Debtors' objection must be

-13-

denied. The Court will enter a separate order consistent with this opinion.

**FOR PUBLICATION**

**Signed on June 12, 2007**

                                       **/s/ Phillip J. Shefferly**
                                   **Phillip J. Shefferly**
                                   **United States Bankruptcy Judge**